Filed 12/22/23  Kelly v. Kelly CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THOMAS P. KELLY III,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>WILLIAM B. KELLY, as Trustee, etc.,<br><br>    Defendant and Respondent. | A166578<br><br><br>(Sonoma County<br>Super. Ct. No. SPR-095583) |

Attorney Thomas P. Kelly, Jr., (Father)[1] created a trust to maintain his wife in their family home for life and then distribute his assets among their three children, who are all lawyers.  Father named his brother William B. Kelly (Bill)—one of the few nonlawyers in the family—as trustee.  After Father died, his son Thomas P. Kelly III (Tom) wound down Father's law practice and canceled his malpractice insurance.  Tom and other lawyers in the family then exchanged emails, which Bill received, about the need to secure an extension of the malpractice policy.  Bill failed to follow up on the emails or secure the extension.  This failure left the trust without coverage for a subsequent malpractice suit by one of Father's former clients.

_____

    [1]  For convenience and intending no disrespect, we refer to the parties by first names, nicknames, or familial role.

1

Tom filed a petition to remove Bill as trustee (the removal petition or petition), which the probate court eventually set for trial. When the parties appeared for trial, however, the court stated its intent to assume Bill had breached his fiduciary duty and to exercise its discretion to excuse him from liability for the breach because he had acted reasonably and in good faith under the circumstances. (Prob. Code, § 16440, subd. (b); undesignated statutory citations are to this code.) The court stated its further intent to dismiss the removal petition as not reasonably necessary to protect the beneficiaries' interests. (§ 17202.) After hearing Tom's contrary arguments, the court did so.

Tom appeals, contending the probate court abused its discretion by finding Bill's breach excusable, dismissing the petition, and doing so in the absence of a pending motion to dismiss and without an evidentiary hearing. We disagree and affirm.

## BACKGROUND

After practicing law for decades, Father died in February 2020. His trust designated his brother Bill, a nonlawyer, to become trustee on Father's death. With Bill's approval, Father's son Tom began winding down Father's law practice.

On March 28, 2020, Tom informed the insurance carrier of Father's death and asked it to cancel his malpractice policy. Tom reported his actions by email to his three paternal uncles: Bill, Hugh Kelly and James Tynan Kelly (Ty). Hugh and Ty are lawyers. Over the next two days, Tom exchanged emails with Hugh and Ty about the policy cancellation and what to do next. Bill received each email in the exchange.

The day after the cancellation request, Hugh and Ty sent emails expressing concern and recommending Tom countermand or reconsider it.

2

Attaching the policy, Tom responded that all known claims had been submitted and acknowledged, and any unknown claims would be covered. Ty asked Tom to provide legal support for that view or, alternatively, to rescind the cancellation and let Bill pay the premium and "sort the matter out" with Bill's lawyers. Tom replied that Bill "will need to contact [the insurance carrier] and tell them."

The next day, the carrier emailed Tom that it had canceled the malpractice policy, effective the day Father died. The carrier attached an "Extended Reporting Period Endorsement (a.k.a., tail) quote." The quote was for tail coverage to insure the trust against claims made after Father's death. Tom forwarded the carrier's email to Bill and the lawyer uncles, Hugh and Ty. Tom wrote: "The malpractice carrier offered tail coverage outlined below. This should address your concerns about the policy. I have not responded as Bill should handle this directly." Minutes later, Tom sent another email reiterating the availability of tail coverage. Ty replied, "Ok. That is good to know." Bill did not take any action or make any inquiry in response to the emails.

For several months, Tom heard nothing more about the coverage issue. In July 2020, Oak Grove Construction (Oak Grove), a former client of Father, sent a malpractice claim (the claim) to a lawyer representing Bill. Tom received a copy of the claim and, unaware of Bill's failure to secure tail coverage, reported the claim to the carrier. Two months later, the carrier denied coverage for the claim. By then, Tom's brother, John, had taken over as counsel for Bill in his role as trustee. The carrier thus sent the coverage denial letter to John. John gave a copy of the letter to Oak Grove's lawyer on the condition he not tell Tom about it. John asked the carrier to direct to him any inquiry by Tom about the claim.

3

In January 2021, Oak Grove filed a malpractice action against Bill and the beneficiaries of the trust in their trust-related capacities. Tom subsequently learned of Bill's failure to buy tail coverage and the carrier's denial of coverage for the claim. Amid escalating tensions, John emailed Tom and others claiming Tom was liable to the trust for his "malpractice" in cancelling the policy and "declining tail coverage."

In April 2021, Tom filed the removal petition under section 17200. The petition, which was verified, described the above events in detail and attached copies of each email discussed above. It alleged two causes of action. The first sought Bill's removal as trustee based on allegations that he breached his fiduciary duty by failing to secure tail coverage and then attempting, with John, to fraudulently conceal that breach. The second sought an accounting.

In June 2021, the malpractice action settled. The trust paid nothing in the settlement. Five months later, the probate court ordered Bill to provide an accounting, and he did so, resolving the second cause of action.

In June 2022, Tom moved for summary judgment on the removal petition. He asked the probate court to remove Bill as trustee and order him to reimburse the trust for the attorney fees and costs it had incurred to defend the malpractice action. In opposition, Bill asked the court to excuse him from liability for any breach of trust under section 16440, subdivision (b). (§ 16440, subd. (b); "§ 16440(b).") He also asked the court to exercise its inherent power to preserve trust assets by dismissing the petition. After an unreported hearing, the court issued an order summarily denying Tom's motion for summary judgment and confirming a trial date.

Before trial, the parties lodged over 100 exhibits, as well as a transcript of Bill's deposition. Tom estimated a three-day trial. He filed a trial brief

seeking the same relief as his motion for summary judgment. Bill's trial brief again asked the probate court to excuse him from liability under section 16440(b) and exercise its power to protect the trust by dismissing the petition.

On the day set for trial, after the parties stated their appearances, the probate court noted it had reviewed the exhibits and deposition excerpts and found no significant factual disputes. It stated its intent to excuse Bill under section 16440(b) from liability for his failure to secure tail coverage on the ground it was reasonable for Bill—as the only nonlawyer on the email thread about the tail quote—to wait "for his relatives, who are [lawyers], to give him some guidance." The court also stated its intent to dismiss the petition under section 17202 because "moving forward with the removal is not in the best interest of the trust, as it would consume trust assets with no benefit to the trust."

Tom opposed dismissal, insisting Bill had breached his fiduciary duty. Engaging in a colloquy with Tom, the probate court stated that, during the email exchange, Bill was "just waiting for someone to tell him what the next step was." Tom responded, "That's not consistent with the fiduciary duty," and the court replied, "[T]hat's why I'm saying it is excusable. I'm not saying he didn't breach his fiduciary duty. I'm saying he did." The court summarized its view as follows: "[A]s I . . . exercise my power under [section] 17202, [I ask,] is it in the best interest of this trust for me to spend three days of the trust['s] time and money on this issue? And I have a lot of the documentation in front of me, and it does not rise to the level where I would be looking at removing Bill with . . . the other . . . beneficiaries not here today as [petitioners;] I just don't see how this benefits the trust." Tom criticized the dismissal as a "surprise," noting he had not briefed the issue as no motion to dismiss was

5

pending.  After hearing further arguments, the court asked Bill's lawyer to prepare an order.

In the order, the probate court admitted into evidence Tom's exhibits consisting of all the emails about the policy cancellation and tail quote.  The order then listed five factors to support both the decision to excuse Bill from liability and the decision to dismiss the petition:  (1) it was understandable that Bill, a nonlawyer, did not appreciate the importance of tail coverage and waited for his lawyer relatives to give him clear guidance; (2) none of the other three beneficiaries had joined the petition; (3) the trust suffered minimal damage given the settlement of the malpractice action, which left as the trust's sole item of damages the attorney fees and costs it incurred to defend that action, which Tom estimated at $25,000; (4) the trust faced no prospect of future harm; and (5) the costs of a trial would exceed the trust's potential damages and deplete its limited assets.

Tom appealed from the probate court's orders denying his motion for summary judgment and dismissing the removal petition.[2]

## DISCUSSION

### I.

### *General Principles*

A probate court has broad power to supervise the administration of a trust.  (*Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427 (*Schwartz*).)

---

[2] We decline Tom's request to review the order denying summary judgment as an intermediate order preceding the appealable dismissal order. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 343.)  We review the correctness of a ruling, not its rationale.  (*County of San Mateo v. Superior Court* (2017) 13 Cal.App.5th 724, 730.)  Because the probate court's ultimate rulings under sections 16440(b) and 17202 were within its discretion, its denial of summary judgment six weeks earlier was necessarily correct on the same bases and cannot have caused Tom prejudice.

6

That includes authority to remove a trustee, but the court should not exercise that authority lightly and "will not ordinarily remove a trustee appointed by the creator of the trust." (*Estate of Bixby* (1961) 55 Cal.2d 819, 826.)

A trustee or beneficiary may commence proceedings concerning the trust by filing a petition under section 17200 for various forms of relief, such as appointment of a trustee, approval of a trustee's accounts, or removal of a trustee. (§ 17200, subds. (a), (b)(5) & (b)(10).) "To preserve the trust and to respond to perceived breaches of trust, the probate court has wide, express powers to 'make any orders and take any other action necessary or proper to dispose of the matters presented' " by such a petition. (*Schwartz, supra,* 164 Cal.App.4th at p. 427, quoting § 17206.) The court's powers include authority to dismiss a petition if it appears the proceeding is not reasonably necessary to protect the interests of the trustee or beneficiary. (§ 17202.)

Because a beneficiary's remedies against a trustee lie " 'exclusively in equity,' " the probate court has wide scope for its conscience in formulating its decrees. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 293 (*Arvizu*), quoting § 16421.) Consistent with the equitable basis of those remedies, section 16440(b) gives the court "discretion to excuse the trustee from liability for any breach of trust . . . committed reasonably and in good faith, if it would be equitable to do so." (*Arvizu,* at p. 294.)

In assessing a decision under section 16440(b) to excuse a trustee from liability for a breach, we review the threshold factual finding that the trustee acted reasonably and in good faith for substantial evidence, and the ultimate decision to excuse the trustee from liability for abuse of discretion. (*Arvizu, supra,* 28 Cal.App.5th at p. 292.) We also review for abuse of discretion a decision under section 17202 to dismiss a petition because the proceeding is

7

not reasonably necessary to protect the interests of the beneficiary. (*Gregge v. Hugill* (2016) 1 Cal.App.5th 561, 567.)

## II.

### *The Probate Court Did Not Abuse Its Discretion Under Section 16440(b) by Excusing Bill's Assumed Breach of Fiduciary Duty.*

Tom challenges several aspects of the probate court's decision to excuse Bill from liability, but his challenges all fail. To reach its decision, the court assumed Bill breached his fiduciary duty by failing to secure tail coverage but found he acted reasonably and in good faith under the circumstances as known to him. The court based its threshold finding of reasonableness on a few undisputed facts. Bill, the only nonlawyer on the email thread about the tail quote, received several messages from three of his lawyer relatives making inconclusive statements about malpractice insurance. The court found it reasonable under the circumstances for him to assume the lawyers in the family would "shake this out" and then tell him how to handle the unfamiliar issue of tail coverage. The court also implicitly found Bill acted in good faith, a fact Tom does not dispute on appeal.

Tom nonetheless makes two challenges to the finding Bill acted reasonably and in good faith, but they both fail. First, Tom disputes the legal relevance of Bill's good faith, citing older decisions holding good faith to be no defense to a breach of trust (e.g., *Lynch v. John M. Redfield Foundation* (1970) 9 Cal.App.3rd 293, 302). But the cases Tom cites predate the 1986 enactment of section 16440(b), which modified the law by expressly making good faith—in conjunction with reasonableness—a basis for a probate court to excuse a trustee from liability for a breach of trust. (Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (2011 ed.) foll. § 16440, pp. 265–266.)

8

The plain text of the current statute controls. (*Estate of Della Sala* (1999) 73 Cal.App.4th 463, 468–469.)

Second, Tom contends he *did* tell Bill what to do about tail coverage in the March 2020 emails. He relies on his emails stating Bill "will need to contact [the insurance carrier] and tell them" and "Bill should handle this directly." But those emails did not inform Bill *what* he should tell the carrier or *how* he should handle the matter. Substantial evidence supports the finding Bill acted reasonably in awaiting more exact instructions from his lawyer relatives on a complex topic familiar to them and not him. (See *Arvizu*, s*upra*, 28 Cal.App.5th at pp. 288, fn. 3, 294–295 [noting trustee's lack of legal sophistication in decision affirming trial court decision to excuse trustee's breach under section 16440(b)].)

We thus uphold the probate court's threshold finding of reasonableness and good faith, which gave the court discretion to excuse Bill from liability under section 16440(b). (*Arvizu*, s*upra*, 28 Cal.App.5th at pp. 294–295.) We review its exercise of that discretion with great deference. (*Id.* at p. 295.) The choice of relief in a trust dispute, including whether to apply section 16440(b), "is properly left to the trial court for determination and generally should not be disturbed on appeal." (*Arvizu*, at p. 295.)

In an attempt to show the probate court abused its discretion, Tom attacks three of the order's reasons for excusing Bill, but his arguments are not persuasive. First, he challenges the court's finding that the breach caused the trust "minimal damage" limited to the attorney fees and costs it paid to defend the malpractice claim. But Tom does not deny the fees were the trust's only item of damages, and he does not deny that a low level of damages supports excusal. He merely quibbles with the amount. The order stated he estimated the amount at $25,000. He points out that $25,000 was

*not* an estimate of the total fees, but the amount of one payment to a law firm shown in Bill's accounting. The accounting reflected other such payments of approximately $26,700, $2,500 and $6,600, and Tom speculates those sums were also paid for the malpractice case.

Tom's speculation cannot establish an abuse of discretion. Of the three payments, only that for $26,700 could even arguably change the magnitude of the total fees. But Tom himself attributes that payment to fees incurred in April and May 2020—before Oak Grove made its malpractice claim. Even if the smaller sums were shown to be for the malpractice case, that would not make the probate court's reliance on this factor improper. (See *People v. Giordano* (2007) 42 Cal.4th 644, 663 [imprecision in calculating restitution amount did not establish abuse of discretion].)

Second, Tom attacks the probate court's finding that the breach created no risk of future harm. He complains the order cited no evidence to support the finding, but Bill, in seeking relief from liability under section 16440(b), was not obliged to prove a negative. (*Baber v. Superior Court* (1980) 113 Cal.App.3d 955, 966.) On appeal, we presume a ruling is correct unless an appellant carries the burden of showing otherwise. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Tom has not borne his burden by identifying a prospect of future harm overlooked by the court.

Third, Tom challenges the probate court's finding that the trust's expenses for a trial would exceed its recoverable damages. Legally, he claims the court could not consider this factor, as no provision in the code authorizes dismissal of a petition based on the costs of trial. We disagree. A court resolving a section 17200 petition has broad discretion to make decisions in the trust's interest, which surely can include comparing a proceeding's costs with its benefits to the trust. (§ 17206.)

10

Factually, Tom contends the finding disregards the trust's ability to recover from Bill, as damages, the fees it incurred in the malpractice action. Tom is mistaken. The probate court knew the trust incurred fees because of Bill's assumed breach and knew it could potentially recover those fees as damages: Its order stated the "only damage claim is for the attorney's fees and costs . . . paid to defend the malpractice claim." The court did not find the trust had no potential damages; it found a three-day trial would cost the trust more than it could recover. Tom has not shown this rationale was an abuse of discretion.

Finally, Tom contends the order reflected an abuse of discretion because it did not address his petition's allegations of fraud by Bill and John. Bill responds that, by the time of trial, Tom had abandoned his allegations of fraud as to Bill. Tom's reply brief does not address the point, so we treat it as conceded. (*Campbell v. Ingram* (1918) 37 Cal.App. 728, 732 [if appellant "has not deigned to reply" to respondent's argument, we may assume appellant deems the argument "unanswerable"].)

In any event, Bill is right: By the time of trial, the allegations of fraud were directed only at John. In his petition, Tom did ascribe each allegedly fraudulent act to "Trustee and his counsel John." But after taking Bill's deposition, Tom no longer ascribed the fraudulent acts to Bill. Tom's trial brief claimed only that Bill had failed to supervise John. Citing Bill's deposition, the brief criticized Bill for having been unaware of the coverage denial when John concealed it. It also stated John made malpractice threats without Bill's "knowledge or authorization." Because the petition sought relief only against Bill, there was no need to address allegations of fraud no longer directed at Bill. (See *Carmichael v. Reitz* (1971) 17 Cal.App.3d 958,

11

968–969 [appellant cannot revive theory asserted in pleading but implicitly abandoned at trial].)

### III.

***The Probate Court Did Not Abuse Its Discretion in Dismissing the Petition Because the Proceeding Was Not Reasonably Necessary.***

Tom claims the probate court abused its discretion by dismissing his petition under section 17202, but his claim rests solely on the arguments we just rejected.  Section 17202 gives a probate court discretion to dismiss a beneficiary's petition for relief under section 17200 if it appears the proceeding is not reasonably necessary to protect the beneficiary's interests. (§ 17202; *Gregge v. Hugill, supra,* 1 Cal.App.5th at p. 567.)  Here, the court's order did not give a separate set of reasons for its decision under section 17202 to dismiss the petition; the order based that decision on the same list of five factors supporting the decision to excuse Bill from liability under section 16440(b).  Likewise, Tom makes just one set of arguments challenging those factors, without distinguishing the two separate decisions he challenges.

We have rejected Tom's arguments under section 16440(b), and he does not claim they apply differently under section 17202, so we also reject them in this context.  Tom does not identify any interest the probate court failed to protect when it dismissed his petition to remove Bill—the trustee named by the trustor—based on one good faith error that caused limited past harm, threatened no future harm, led no other beneficiary to seek Bill's removal, and would require a three-day trial to assess.

12

## IV.

### *The Probate Court Did Not Abuse Its Discretion by Dismissing the Petition Without a Motion to Dismiss or Evidentiary Hearing.*

Tom contends the probate court abused its discretion by dismissing the petition when no motion to dismiss was pending. His argument fails. He has not shown probate courts lack jurisdiction to make such rulings absent a pending motion to dismiss. Nor has he shown the court in this case abused its discretion by doing so.

Tom bases his jurisdictional argument on section 1042, which provides that "[a] hearing under this code shall be on notice unless the statute that provides for the hearing dispenses with notice." Neither section 16440(b) nor section 17202, Tom notes, dispenses with notice of a hearing on a motion to dismiss. He thus claims a probate court can never exercise its powers under those provisions absent a noticed motion to dismiss. We disagree. Tom cites no authority applying section 1042 to such effect.

Nor does he address *Schwartz, supra*, 164 Cal.App.4th 417, which is cited in the dismissal order, and which rejected a very similar contention. (*Id.* at pp. 425–429.) There, a trustee claimed a probate court lacked jurisdiction to suspend him as trustee, at a hearing on his own petition under section 17200 to approve his account, because no removal petition had been filed. (*Schwartz*, at pp. 425–426.) But the Second District held the trustee's section 17200 petition triggered the probate court's duty to scrutinize his acts. (*Schwartz*, at p. 427.) This enabled the court to exercise its broad authority to " 'make any orders and take any other action necessary or proper to dispose of the matters presented' " by such a petition. (*Ibid.*, quoting § 17206.) Here, similarly, the petition to remove Bill as trustee triggered the probate court's equitable power to assess Bill's conduct and make appropriate orders to dispose of the matters raised by the petition. (*Schwartz*, at p. 428.)

13

The lack of a pending motion to dismiss did not deprive the court of jurisdiction—at a noticed hearing on the petition—to exercise its powers under sections 16440(b) and 17202. (*Schwartz*, at p. 428.)

On the facts of this case, Tom fails to show the probate court abused its discretion by considering dismissal at the start of trial. The cases he cites to support his contention are distinguishable. For example, in *Lee v. An* (2008) 168 Cal.App.4th 558, 565, a trial court struck a party's answer and entered her default as sanctions for missing a case management conference, but the appellate court reversed because she had no notice she could incur sanctions for failing to appear. In *Mays v. Disneyland, Inc.* (1963) 213 Cal.App.2d 297, 300, after holding a new trial was required, the court of appeal directed the trial court on remand to reconsider a pretrial ruling it had based on an allegedly inadvertent concession at a pretrial conference. And in *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, while warning against procedural "shortcuts," the appellate court held that dismissing a claim while ruling on a motion in limine was a harmless "procedural irregularity." (*Id.* at pp. 1594–1595.)

Here, the probate court did not rule at a case management conference, a pretrial conference, or any other proceeding at which Tom lacked notice that it would reach the merits of the case. It ruled on the day set by written notice for trial on his removal petition, which he had filed under section 17200. Twice before that day—in his summary judgment opposition and his trial brief—Bill had asked the court to excuse him from liability under section 16440(b) and to dismiss the petition. Indeed, in the conclusion in his trial brief Bill specifically requested dismissal, stating, "Because the probate court has broad powers to protect the Trust estate, the Court may at any time dismiss the Petition. (Probate Code §§ 15624[, subd. ](a),

14

17200[, subd. ](b)(10); *Schwartz v. Labow* (2008) 164 Cal.App.4th, 427–428).” That circumstance further echoes *Schwartz, supra,* 164 Cal.App.4th 417, where the appellate court held a trustee had adequate notice for a decision to suspend him, despite the lack of a pending removal petition, because three parties had requested suspension in their objections to his account. (*Id.* at pp. 428–429.) The same rationale applies here.

Tom also complains of the probate court's failure to hear evidence, such as his proposed expert testimony on fiduciary standards, but he identifies no prejudice. He cites section 1046, which states a probate court "shall hear and determine any matter at issue and any response or objection presented, consider evidence presented, and make appropriate orders." But here, the court made its order only after admitting into evidence Tom's exhibits comprising the emails discussed above, and assuming the evidence at a trial would be consistent with Tom's verified petition. Moreover, it based its ruling on a specific assumption resolving in Tom's favor what Tom himself labels "[t]he central issue in this case," namely, whether Bill breached his fiduciary duty. Tom identifies no remaining factual dispute an evidentiary hearing was required to resolve, and he cites no authority construing section 1046 in a way precluding the court's eminently sensible ruling.

## DISPOSITION

The October 27, 2022 dismissal order is affirmed. Bill is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

STEWART, P. J.

WE CONCUR:

RICHMAN, J.

MILLER, J.

A166578
*Kelly v. Kelly*